The **GENERAL FIREPROOFING COMPANY**, **Plaintiff-Appellant**,

v.

**Thomas G. WYMAN, individually and as a stockholder and director of American Seating Company, and American Seating Company, Defendants-Appellees.**

**Nos. 1003, 1004, Dockets 71–1367, 71–1458.**

United States Court of Appeals, Second Circuit.

Argued May 27, 1971.

Decided June 18, 1971.

William Simon, Washington, D. C. (Mudge Rose Guthrie & Alexander, New York City, John Bodner, Jr., J. Coleman Bean, William R. O'Brien, Howrey, Simon, Baker & Murchison, Washington, D. C., of counsel), for plaintiff-appellant.

Paul W. Williams, New York City (William T. Lifland, Clifford L. Michel, Joel C. Balsam, Cahill, Gordon, Sonnett, Reindel & Ohl, New York City, of counsel), for defendant-appellee Thomas G. Wyman.

Robert L. Clare, Jr., New York City (George J. Wade, Leo Kayser, III, Shearman & Sterling, New York City, F. William Hutchinson, Varnum, Riddering, Wierengo & Christenson, Grand Rapids, Mich., of counsel), for defendant-appellee American Seating Company.

Before KAUFMAN, ANDERSON and MANSFIELD, Circuit Judges.

PER CURIAM:

Plaintiff, The General Fireproofing Company, appeals the grant of summary judgments dismissing its suit under the antitrust and securities laws against American Seating Company, and Thomas G. Wyman. The district court also granted summary judgment in favor of Wyman's counterclaim, which sought disclosure of General's stockholder list.[1] We affirm.

Wyman, a private investor, is a director of American and owns approximately 10% of its outstanding voting shares. He also owns a little over 4% of General's outstanding common stock. General's complaint, as amplified by affidavits submitted in opposition to the motion for summary judgment, alleged that Wyman and American intended to place Wyman, or his nominee, on General's board of directors. Because the two corporations were asserted to be substantial competitors in such product lines as school and hospital chairs, waiting room furniture, and laboratory furniture, it was claimed that this intention, if realized, would violate the Clayton Act's proscription of interlocking directorships. Clayton Act § 8, 15 U.S.C. § 19. According to General, moreover, the interlock was but a preliminary step to the ultimate goal of merging the two corporations, a result which would run afoul of the Clayton Act's antimerger provision. Clayton Act § 7, 15 U.S.C. § 18. The complaint further charged that Wyman intended to purchase more than 10% of General's outstanding stock without making the disclosures required by § 14(d) (1) of the Securities Exchange Act, 15 U.S.C. § 78n(d) (1). The complaint sought injunctions against each of these allegedly unlawful acts.

Plaintiff claimed that the existence of these plans was evidenced by a series of incidents beginning in 1969 and leading up to the filing of the complaint. In March 1969 a business broker had solicited General's views on the desirability of a merger with American. Four months later, Wyman had also raised the merger topic with General's management, although specific companies were not discussed. On both occasions General expressed disinterest. Later in 1969 and again in early 1970 Wyman unsuccessfully sought agreement from General that he or his nominee would be named a director. At the April 1970 annual shareholders' meeting, Wyman nominated a candidate for the board but failed to attract enough support from other stockholders to win the seat. In the summer of 1970 Wyman communicated with a shareholder and dealer of General. Neither contact led to anything of importance. Finally, on November 3, 1970 Wyman requested access to General's shareholder list so that he might communicate with them regarding General's affairs. General resisted the request on the ground that it was a step in Wyman's overall plan to merge Gener-

---

1. Summary judgment in favor of American was entered on April 12, 1971, and for Wyman on April 14, 1971. The judgment favoring Wyman included the summary judgment on the counterclaim.

al and American. Five days after its refusal General brought this suit.

 General argues with some vehemence that its complaint and supporting affidavits raised genuine issues as to the existence of the Wyman-American plan to create interlocking boards and ultimately to merge the corporations, and that it was therefore entitled to go to trial upon its complaint asking for permanent injunction. The difficulty with this argument, however, is that more than an abstract or nebulous plan to possibly commit a wrong sometime in the future, must be shown before the broad and potentially drastic injunctive power of the court will be exercised. Rather, "[i]njunction issues to prevent existing or *presently threatened* injuries." Connecticut v. Massachusetts, 282 U.S. 660, 674, 51 S.Ct. 286, 291, 75 L.Ed. 602 (1931) (emphasis supplied). It is clear beyond cavil that Wyman and American lack the present capability of putting the alleged plan into effect. Accordingly, it can hardly be said to present an imminent threat. Indeed, American's board has resolved that it would not approve a merger with General and has no interest in one. That some day in the vague future enough General Stock may be committed to elect Wyman or his nominee to a directorship, or to approve a merger, will not suffice. In this connection, it is not denied that Wyman's purchases of General Stock ended in July 1969, seventeen months befor the present suit was filed, and it is mere conjecture whether and when these purchases will resume. Similarly, the likelihood that Wyman may subject himself to the reporting requirements of § 14(d) (1), and may fail to satisfy them, remain nothing more than pure speculation. An injunction "will not be granted against something merely feared as liable to occur at some indefinite time in the future." Connecticut v. Massachusetts, *supra*, 282 U.S. at 674, 51 S.Ct. at 291. General's complaint was obviously premature, and since its affidavits raised no "genuine issue[s] as to any material fact" the summary judgments dismissing the complaint were appropriate. F.R.Civ.P. 56(c); cf. Dressler v. M. V. Sandpiper, 331 F.2d 130 (2d Cir. 1964). Since General concedes that Wyman is entitled to inspect the shareholder list should its suit for an injunction fail, the grant of summary judgment in favor of *Wyman's counterclaim is also* affirmed.